**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE LABORERS HEALTH AND WELFARE TRUST FUND FOR THE NORTHERN CALIFORNIA,<br><br>                    Plaintiffs,<br><br>          v.<br><br>ELADIO PEREZ,<br><br>                    Defendant.<br>_____/ | No. C-10-2002 JSW (JCS)<br><br>**REPORT AND RECOMMENDATION RE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**<br><br>**[Docket No. 26]** |

## I.    INTRODUCTION

In this enforcement action brought under the Employee Retirement Income Security Act ("ERISA"), Plaintiffs bring a Motion for Default Judgment ("the Motion") seeking entry of default judgment, an award of outstanding employee fringe benefit contributions, interest, liquidated damages, attorneys' fees and costs, and an injunction requiring Defendant to submit to an audit of its books and records.  Motion at 2, 11-12.  The Court took the Motion under submission after finding that the Motion was suitable for determination without oral argument, pursuant to Civ. L.R. 7-1(b).  Docket No. 36.

Having considered the Motion and the accompanying submissions, and for the reasons stated more fully below, the Court recommends that the Motion be GRANTED IN PART and DENIED IN PART, and that the Plaintiffs be awarded $107,953.90 in unpaid employee benefit contributions as well as interest and liquidated damages thereon, in addition to $6,661.01 in attorneys' fees and costs for a total of $114,614.91.  The Court also recommends that the Court enter an injunction requiring Defendant to submit to an audit of his records for the period from January 2008 to present.

1

**United States District Court**

For the Northern District of California

## II.    BACKGROUND

### A.    Parties and Terms of Agreement

Plaintiffs are the Boards of Trustees for four (4) Trust Funds ("the Trust Funds"), which they allege are multi-employer, employee benefit plans within the meaning of §§ 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and 1002(37).  Second Amended Complaint ("SAC"), ¶3.  The Trust Funds include: (1)  Laborers Pension Trust Fund for Northern California ("Pension Trust Fund"), (2) Laborers Vacation-Holiday Trust Fund for Northern California, (3) The Laborers Health and Welfare Trust Fund for Northern California, and (4) Laborers Training and Retraining Trust Fund for Northern California.  *Id.*; Declaration of John Hagan in Support of Motion for Default Judgment ("Hagan Decl."), ¶ 1.  Plaintiffs allege that the Trust Agreements for all four of the Trust Funds contain the same terms and conditions as the Trust Agreement for the Pension Trust Fund and therefore, the references to the Pension Trust Fund apply to all the Trust Funds.  Hagan Decl., ¶11.

Plaintiffs allege that the Trust Funds are organized under and pursuant to the provisions of §§ 302(c)(5) and 302(c)(6) of the Labor Management Relations Act of 1947, as amended 29 U.S.C. §§ 186(c)(5) and 186(c)(6).  SAC, ¶ 3; *see also* Hagan Decl., Ex. A. (copy of pages 1-4 of the Recitals to the Trust Agreement - Laborers Pension Trust Fund For Northern California) & Ex. B (copy of pages 5-7 of Article II Section 1 of the Trust Agreement, establishing Laborers Pension Trust Fund for Northern California).  The Plaintiffs' Trust Funds consist of all employee fringe benefit contributions that are to be made by employers pursuant to collective bargaining agreements as well as all returns on contributions and any other property received or held by the Trust Funds.  Hagan Decl., ¶10 & Ex. A.

According to the Complaint, Defendant Eladio Perez, doing business as E & F Demolition ("Defendant"), is a sole proprietorship owned solely by Eladio Perez, with its principal place of business located in Oakland, California.  SAC, ¶ 7.  Plaintiffs allege Defendant is and has been an employer within the meaning of Section 3(5) and Section 515 of ERISA, 29 U. S. C. §§ 1002(5), 1145.  *Id.*

Plaintiffs further alleges that Defendant is and was bound to a written, collective bargaining agreement with the Northern California District Council of Laborers ("Laborers Union") titled the

**United States District Court**
For the Northern District of California

1   Laborers' Master Agreement For Northern California ("Master Agreement").  SAC, ¶ 9; Hagan

2   Decl., ¶ 6 & Ex. F.  Pursuant to the Master Agreement, Defendant is and was bound by all

3   provisions and conditions of the Trust Funds' written trust agreements.  *Id.*  Under these agreements,

4   Defendant promised and agreed to make certain contributions to the Trust Funds and pay certain

5   fees should they fail to make the required contributions.  Hagan Decl., ¶ 16 & Ex. G (copy of

6   Section 28 of the Master Agreement requiring employers to make contributions to the Trust Funds

7   based on the hours their respective employees worked).  Specifically, Defendant agreed to: (1)

8   regularly pay employee fringe benefit contributions into each Trust Fund in monthly payments on or

9   before the 25th day of the month immediately succeeding the month in which the employee's work

10  was performed; (2) in the month in which such contributions became due, to pay interest on the

11  delinquent contributions in the amount of 1.5% per month until paid in full, and also pay the amount

12  of $150.00 for each delinquent contribution as liquidated damages, and not as a penalty; and (3) if

13  any suit with respect to any of the contributions or payments were filed against it, Defendant would

14  pay into Trust Funds attorneys' fees, costs, and all other expenses incurred in connection with such

15  suit.  Hagan Decl., ¶ 16 & Ex. H (copy of Liquidated Damage Program - Board Policy).

16       Plaintiffs allege that the Master Agreement with the Defendant has never been terminated,

17  that the Plaintiffs have performed all conditions, covenants, and promises on their part in accordance

18  with the terms and conditions of the Master Agreement and Trust Agreements and that Defendant

19  has materially breached the Master Agreement within the past four years.  SAC, ¶¶ 11-13.

20       Plaintiffs further allege that by virtue of the Master Agreement, the Board of Trustees is

21  permitted to seek judicial relief of payment contributions due, including the recovery of delinquent

22  contributions.  Hagan Decl., ¶ 13 & Ex. D (copy of Article IV, Section 3 of the Trust Agreement,

23  giving Board of Trustees power to demand and enforce by suit or otherwise, contributions to the

24  Fund).  The Trust Agreement also requires an employer to submit to an audit by the Board of

25  Trustees.  Hagan Decl., ¶ 14 & Ex. E (copy of Article IV, Section 7 of the Trust Agreement, stating

26  that the Board of Trustees may require a signatory employer to submit to an audit upon request).

27       Additionally, the Laborers Pension Trust Fund for Northern California provides for the

28  establishment and maintenance of the Annuity Fund and Annuity Plan.  Hagan Decl., ¶12 & Ex. C

(copy of Article IV, Section 13 of the Laborers Pension Trust Fund for Northern California).

**B.      The Complaints**

The Plaintiffs filed the Complaint in this action on May 10, 2010.  Plaintiffs filed a First Amended Complaint ("FAC") on May 24, 2010.  *See* Docket No. 4.  On July 24, 2010, Plaintiffs filed the Second Amended Complaint ("SAC").  *See* Docket No. 9.  The Plaintiffs name as Defendant Eladio Perez, dba E & F Demolition.  In the SAC (as in the Complaint and the FAC), the Plaintiffs bring three claims: (1) damages for Breach of Collective Bargaining Agreement; (2) Recovery of Unpaid Trust Fund Contributions; and (3) a Mandatory Injunction.  SAC at 3, 6, 9.

Defendant did not appear or otherwise file a responsive pleading in this action.   Pursuant to Federal Rule of Civil Procedure 55(a), default was entered on December 6, 2010.  *See* Docket No. 19.

Plaintiffs brought the present Motion on March 21, 2011.  In the Motion, Plaintiffs seek:

(1) the unpaid balance of employee fringe benefit contributions that were reported but not paid for the period of July and August 2010 in the principal amount of $25,414.64;

(2) under 1132(g)(2)(B), interest on this principal amount calculated through December 25, 2010 in the amount of $1,378.16;

(3) under 1132(g)(2)(C), interest ("penalty interest") on this principal amount calculated through December 25, 2010 in the amount of $1,378.16;

(4) employee fringe benefit contributions not reported, and not paid, for the period of January - August and November 2008 in the principal amount of $513.70;

(5) interest in the amount of $582.37 (under § 1132(g)(2)(B)) and penalty interest in the amount of $582.37 (under § 1132(g)(2)(C)) on the unpaid, unreported principal amount;

(6) the unpaid principal balance of $5,514.52 for contributions not reported and not paid based on an audit[1] for the period August - December 2007;

(7) interest in the amount of $29,616.64 (under § 1132(g)(2)(B)) and penalty interest in the

---

[1]This amount represents hours worked and contributions due, as discovered by an audit performed by Plaintiffs.  *See* Hagan Decl., ¶ 26 & Ex. N (Statement of Contributions Due Laborers Trust Funds [Not Reported/Not Paid]).

United States District Court

For the Northern District of California

amount of $29,616.64 (under § 1132(g)(2)(C)) on the unpaid, unreported principal amount discovered by audit;

(8) liquidated damages and interest that have accrued on contributions paid, but paid late in the amount of $45,995.11 for the periods: June - December 2004, February - November 2005, January - December 2006, January - December 2008, January - December 2009, January - June 2010;

(9) attorneys' fees and costs in the amount of $12,399.51;

(10) a mandatory injunction requiring the Defendant to submit to an audit of their financial records; and

(11) a reservation of the Court's jurisdiction of the parties and the subject matter to enforce its mandatory injunction and to entertain a motion for a further money judgment, should the audit disclose amounts that may be owed by Defendant to the Trust Funds.  Motion at 6-12. The total amount sought is $152,991.82.  *Id.*

## III.    ANALYSIS

### A.    Adequacy of Service of Process

As a preliminary matter, where entry of default judgment is requested, the Court must determine whether service of process was adequate.  *Bank of the West v. RMA Lumber Inc.*, 2008 WL 2474650, at *2 (N.D. Cal. Jun. 17, 2008).  If service of process is insufficient, a federal court lacks personal jurisdiction over the defendant and cannot decide the case on the merits.  *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).

Sole proprietorships, unlike corporations, have no legal existence separate from their owners; as a result, service of process on these entities must accord with standards for service of individuals. *See*, *e.g.*, *Berry v. Smith*, 2008 WL 3211305, at *1 FN2 (S.D. Ala. Aug. 6, 2008) (sole proprietorship and owner are considered to be a single entity); *Oberstein v. SunPower Corp.*, 2008 WL 630073, at *3 (E.D.N.Y. Mar. 5, 2008) (sole proprietorship may proceed in a suit pro se since it has no legal existence apart from its owner); *Heisel v. John Deere Construction & Forestry Co.*, 2008 WL 53232, at *11 (E.D. Mo. Jan. 2, 2008) (a sole proprietorship has a single owner and is characterized by a complete merger of the business entity with the individual doing business); *Elliot v. Dave*

*Ernstes & Sons Trucking*, 2006 WL 2849705, at *1 FN2 (S.D. Ind. 2006) (sole proprietorship has no legal existence separate from its owner).

According to Federal Rule of Civil Procedure 4(e), an individual may be served in a United States judicial district either by following state law for serving a summons and complaint in the state where the district court is located *or* by doing one of the following: (1) personally serving the defendant with a copy of the summons and complaint, (2) leaving a copy of the summons and complaint at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, or (3) delivering a copy of the summons and complaint to someone authorized for the service of process.  Fed. R. Civ. P. 4(e)(1)-(2).  Plaintiffs have presented evidence that the Summons and Complaint were initially served on Defendant by federal substituted service, *i.e.*, by leaving a copy of the summons and complaint at Defendant's Oakland address with his office manager and thereafter mailing copies of the summons and complaint to the same address, on May 19, 2010.  Docket No. 5.

Thereafter, Plaintiffs filed the First Amended Complaint ("FAC").  Docket No. 4.  A registered California process server personally served Defendant's office manager, Veronica McDaniel, at Defendant's Oakland address with the FAC, though not a new Summons, on May 26, 2010.  Docket No. 6.  Similarly, Plaintiffs personally "served" Eladio Perez with a copy of the SAC on July 29, 2010.  Docket No. 12.  However, the "proof of delivery" does not state which documents were actually served so we are left to guess that only the SAC (and not a summons) was served.

Rule 4 of the  Federal Rules of Civil Procedure provides: "[a] summons must be served with a copy of the complaint."  Fed. R. Civ. P. 4(c)(1).  Rule 5, in turn, governs service of "every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants."  Fed. R. Civ. P. 5(a).  Under Rule 5, unless an amended complaint asserts new or additional claims for relief, it does not have to be served in one of the manners prescribed in Rule Four to a party in default for failure to appear in the case.  Fed. R. Civ. P. 5(a) (stating that "[n]o service [of an amended complaint] is required on a party who is in default for failing to appear.  But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4.").

United States District Court

For the Northern District of California

The question is whether default judgment may be granted in a case, such as this one, where only the original complaint and summons were properly served under Rule 4.  In this case, the differences between the Complaint (which was properly served) and the SAC (which was served without a summons) concern only factual allegations as to (1) the amounts of principal, interest, and liquidated damages owed to Plaintiffs; and (2) the time periods during which those charges accrued, all of which were prior to the service of the original complaint or after the commencement of the lawsuit.  Compl., ¶¶ 13-15, 18-24; SAC, ¶¶ 13-15, 18-23.  "Where changes made in an amended complaint are not substantial, the requirement of [Rule 5(a)(2)] that a pleading that states a new claim for relief against a party in default must be served is not applicable."  *Belkin v. Islamic Republic of Iran*, 667 F. Supp.2d 8, 20 (D.D.C. 2008) (internal quotations omitted).

Here, the SAC contains no new claims.  It does, however, contain new factual allegations.  The Court finds, pursuant to Rule 5(a)(2), that because there are no new claims alleged in the SAC, and the new allegations are *damages* allegations, Plaintiffs were not required to serve Defendant with the SAC.[2]  *See Orocovis Petroleum Corp. v. Puerto Rico Ports Authority,* 2010 WL 3420004 (D. Puerto Rico 2010) ("Therefore, because the changes made in the amended complaint [not properly served] were not substantial, additional service of process on the original defendants was not required and the amended complaint should be used to determine the sufficiency of the claims.") (*citing* Fed. R. Civ. P. 5(a)(2)).

The Court finds that Defendant was provided with adequate notice of the claims against which he chose not to defend after Plaintiffs' proper service of the original complaint.  *See Blair v. City of Worchester*, 522 F.3d 105, 109 (cautioning against "exalt[ing] form over substance" and explaining that "Rule 5(a)(2) ensures that a party, having been served, is able make an informed decision not to answer a complaint without fearing additional exposure to liability for claims raised

---

[2]The Court notes that one court in this district has found  Rule 5(a)(2) to be inapplicable in "the situation where a plaintiff seeks entry of default on a complaint with new factual allegations instead of new "claims" [because on] entry of default, all factual allegations in the complaint are generally taken as true, except for those related to damages." *See IBEW Local 595 Health & Welfare Trust Fund v. Givens Electric, Inc.*, 2011 WL 2414346 (N.D. Cal. Jun. 15, 2011) (Seeborg, J.) (citing *Tele Video System, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)).  This Court's recommendation is not contrary to Judge Seeborg's reasoning.  On default judgment, the Court does not accept damage allegations as true.

United States District Court

For the Northern District of California

1   only in subsequent complaints that are never served.  Here, we have no doubt that the original

2   complaints provided the defendants with fair notice [of the claims on which] the plaintiffs sought

3   recovery.")

4           This Court therefore finds it proper to exercise personal jurisdiction over Defendant and treat

5   the SAC as the operative complaint for purposes of the present default judgment motion.  Having

6   concluded that the district court may properly exercise personal jurisdiction over Defendant, the

7   Court turns to the merits of Plaintiffs' claims and whether awarding default judgment is appropriate

8   in this case.

9           **B.     Legal Standard Regarding Entry of Default Judgment**

10          Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a

11  default judgment where the clerk, under Rule 55(a), has previously entered the party's default based

12  upon failure to plead or otherwise defend the action.  Fed. R. Civ. P. 55(b).  Once a party's default

13  has been entered, the factual allegations of the complaint, except those concerning damages, are

14  deemed to have been admitted by the non-responding party.  Fed. R. Civ. P. 8(b)(6); *see also Geddes*

15  *v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (stating the general rule that "upon

16  default[,] the factual allegations of the complaint, except those relating to the amount of damages,

17  will be taken as true").  A defendant's default, however, does not automatically entitle the plaintiff

18  to a court-ordered default judgment.  *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986).

19          "Granting or denying a motion for default judgment is a matter within the court's discretion."

20  *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 2010 WL 2889490, at *2 (C.D. Cal. Jul. 19, 2010)

21  (quoting *Elektra Entertainment Group Inc. v. Bryant*, No. CV 03-6381 GAF (JTLx), 2004 WL

22  783123, at *1 (C.D. Cal. Feb. 13, 2004)).  The Ninth Circuit has directed that courts consider the

23  following factors in deciding whether to enter default judgment:

24          (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3)
            the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the
25          possibility of a dispute concerning the material facts; (6) whether defendant's default was the
            product of excusable neglect; and (7) the strong public policy favoring decisions on the
26          merits.

27  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

28

**United States District Court**
For the Northern District of California

1. ***Eitel* Factors**

      a.      **Possibility of Prejudice to Plaintiff**

The first Eitel factor considers whether plaintiffs will suffer prejudice if a default judgment is not entered. *Pepsico, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). To the extent that Defendant has failed to appear in, or otherwise defend this action, Plaintiffs will be left without a remedy if default judgment is not entered in their favor. Therefore, this factor weighs in favor of entry of default judgment.

      b.      **Merits of Plaintiffs' Substantive Claims and Sufficiency of the Complaint**

The second and third *Eitel* factors weigh the substantive merit of the plaintiff's claims and the sufficiency of the pleadings to support these claims. In order for these factors to weigh in favor of entering a default judgment, the plaintiffs must state a claim upon which they may recover. *Pepsico*, 238 F. Supp. 2d at 1175; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

      i.      **Outstanding Fringe Benefits and Interest Thereon**

The Plaintiffs have brought their claims under ERISA, which provides that a trustee is authorized to bring a civil enforcement action in order to recover unpaid contributions from an employer who is bound to make such contributions under a collective bargaining agreement. *See* 29 U.S.C. § 1132(a)(3) (authorizing fiduciary of employee benefit plan to bring a civil action to enforce provision of ERISA); § 1145 (providing that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collective bargaining agreement shall...make such contributions"); § 1002(14) (defining fiduciary as including trustees).

In support of their ERISA claims, Plaintiffs allege that the Defendant entered into a collective bargaining agreement with the Northern California District Council of Laborers entitled "the Master Agreement." SAC, ¶ 9; Hagan Decl., ¶¶ 7, 15. Plaintiffs state that Defendant was obligated to contribute to the Laborers Trust Funds for benefits based upon the number of hours of covered work by their employees and subcontractors. Hagan Decl., ¶ 7. Plaintiffs further allege that Defendant failed to pay contributions while bound by the Master Agreement. *Id.,* ¶ 17. These

**United States District Court**
For the Northern District of California

1    allegations state a valid claim under ERISA.

2          Plaintiffs have supported the claims by providing copies of the Trust Agreement - Laborers

3    Pension Trust Fund For Northern California and Article II of the Laborers Pension Trust Fund For

4    Northern California  (establishing the Laborers Pension Trust Fund For Northern California),

5    Article IV - Functions: Powers of the Board (providing for the establishment and maintenance of

6    the Annuity Fund and Annuity Plan under the Laborers Pension Trust Fund for Northern California,

7    the right of the Board of Trustees to seek judicial relief of contributions due and, the duty of an

8    employer to submit to an audit by the Board of Trustees), copies of EUCA Laborers Signatories

9    (showing Eladio Perez as a signatory to the Master Agreement), Section 28 of the Laborers Master

10   Agreement (requiring employers to make contributions to the Trust Fund based upon the hours their

11   respective employees worked), a Statement of Contributions Due Laborers Trust Funds [Reported /

12   Not Paid] (stating past due contributions from Defendant, Eladio Perez), copies of Employer

13   Reports of Contribution for the periods July-August 2010 (detailing the amount of covered work

14   and the amount due the Trust Funds), contributions not reported and not paid, contributions not

15   reported and not paid that were discovered as a result of Plaintiffs' audit, as well as a copy of the

16   Liquidated Damage Program – Board Policy (detailing liquidated damages and interest accruing on

17   contributions that were paid, but paid late).  *See* Hagan Decl., Exs. A - Q.  Based on the record

18   before it, the Court concludes that these facts weigh in favor of a default judgment.

19                    **ii.      Mandatory Injunction Requiring Defendant to Submit to
                               an Audit of their Financial Records**

20

21          Plaintiffs have brought this claim for a mandatory injunction under ERISA, which

22   authorizes the Trust Funds to audit the records of the employer so long as the audit is done in

23   furtherance of a proper purpose.  Plaintiffs have alleged that the Defendant is required to allow the

24   Trust Funds access to its books and records to determine the amount of trust fund contributions due

25   and owing.  SAC, ¶ 27.  Here, the Plaintiffs have claimed that an audit of the Defendant's records is

26   the only way to determine the full amount of employer contributions owed to them under the terms

27   of the Trust Agreements.  SAC, ¶ 28.  Additionally, Plaintiffs allege that they have an obligation to

28   ensure that contributions required to be made to the Trust Funds are fully and correctly made.

SAC., ¶ 26.

In support of their mandatory injunction claim, Plaintiffs have provided a copy of the Trust Agreement, Article IV, Section 7 (stating that signatory employers must submit to an audit by the Board of Trustees) in addition to the Declaration of John J. Hagan. *See* Hagan Decl. & Ex. E. Based on the record before it, the Court concludes that these facts weigh in favor of default judgment.

### c.    Amount at Stake

The fourth *Eitel* factor balances the amount of money at stake in the claim in relation to the seriousness of the defendant's conduct. *Eitel*, 782 F.2d at 1471-72.

Here, Plaintiffs request $152,991.82 in compensatory and statutory damages, interest, liquidated damages, attorneys' fees, and costs against Defendant, in addition to a mandatory injunction. The Court finds that this factor favors entry of default judgment.

### d.    Possibility of Dispute

The fifth *Eitel* factor weighs the possibility that material facts may be in dispute. *Id*. Here, because the Defendant has failed to respond in this action, there is an absence of material facts in dispute in the record from which the Court may weigh this factor. Therefore, this factor is neutral.

### e.    Possibility of Excusable Neglect

The sixth *Eitel* factor weighs whether the defendant's default may have been the product of excusable neglect. *Id.* Here, Plaintiffs have presented evidence that the Summons and Complaint were properly served on Defendant by federal substituted service on May 19, 2010. Docket No. 5. Plaintiffs have also presented evidence that a registered California process server subsequently personally served Defendant's office manager, Veronica McDaniel, with the FAC on May 26, 2010. Docket No. 6. Given the repeated notice to Defendant of this pendency of this lawsuit, there is no evidence in the record that Defendant's failure to appear or otherwise defend was the result of excusable neglect. Rather, Defendant failed to appear after being served multiple versions of the complaint, indicating that its failure to appear was willful. Therefore, this factor weighs in favor of entry of default judgment.

**United States District Court**
For the Northern District of California

11

United States District Court
For the Northern District of California

1

#### f.       Policy for Deciding Cases on the Merits

2    The seventh *Eitel* factor balances the policy consideration that whenever reasonably possible,

3    cases should be decided upon their merits. *Eitel*, 782 F.2d at 1472. The existence of Rule 55(b)

4    though indicates that this preference towards disposing of cases on the merits is not absolute.

5    *Pepsico*, 238 F. Supp. 2d at 1177. Here, because the Defendant has failed to respond or otherwise

6    defend itself in this action, deciding the case upon the merits is not possible and this factor is

7    therefore neutral.

8    As discussed above, *Eitel* factors 1, 2, 3, 4, and 6 weigh in favor of granting the final default

9    judgment and factors 5 and 7 are neutral. Therefore, the *Eitel* analysis weighs in favor of granting

10   final default judgment. Accordingly, it is recommended that default judgment be entered against the

11   Defendant on Plaintiffs' ERISA claims.

12   #### C.       Requested Relief Under Section 1132(g)

13   Once liability is established in a default situation, a plaintiff must then establish that the

14   requested relief is appropriate. *Geddes*, 559 F.2d at 560. Under ERISA, section 1132(g) provides

15   for statutory damages where a multi-employer plan successfully sues under 29 U.S.C. § 1145:

16   "Every employer who is obligated to make contributions to a multiemployer plan under the terms of

17   the plan or under the terms of a collective bargaining agreement shall . . . make such contributions in

18   accordance with the terms and conditions of such plan or such agreement." A plan that obtains

19   judgment in its favor in an action for unpaid contributions under § 1145 is entitled to:

20       (A) the unpaid contributions,

21       (B) interest on the unpaid contributions

22       (C) an amount equal to the greater of–

23           (1) interest on the unpaid contributions, or

24           (2) liquidated damages provided for under the plan in an amount not in excess

25           of 20 percent . . . of the amount determined by the court under subparagraph

26           (A),

27       (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

28       (E) such other legal or equitable relief as the court deems appropriate.

**United States District Court**
For the Northern District of California

29 U.S.C. § 1132(g)(2).

Additionally, in ERISA actions by a fiduciary to recover unpaid contributions pursuant to 29 U.S.C. § 1132, federal courts borrow the forum state's statute of limitations governing breach of contract claims, so long as application of the state statute's time period would not impede effectuation of federal policy. *Northwest Adm'rs, Inc. v. AD Automotive Distributors Inc.*, 2006 WL 1626940 (N.D. Cal. Jun. 12, 2006), at *3 (citing *Pierce Co. Hotel Employees and Rest. Employees Health Trust v. Elks Lodge*, 827 F.2d 1324, 1328 (9th Cir. 1987)). The applicable statute of limitations is the four-year statute under California law for breach of a written contract, Cal. Code Civ. P. § 337. *See No. Cal. Retail Clerks Unions and Food Employers Joint Pension Trust Fund. v. Jumbo Markets, Inc.*, 906 F.2d 1371, 1372 (9th Cir. 1990) (finding that district court properly applied the limitations period under § 337 to the ERISA action). Applying federal law to determine the time at which the cause of action accrues, the statute of limitations begins to run "when a plaintiff knows or has reason to know of the injury that is the basis of the action." *Northwest Adm'rs, Inc.*, 2006 WL 1626940, at *4 (citing *Pierce Co. Hotel Employees*, 827 F.2d at 1328).

Here, Plaintiffs do not allege the date on which they became aware of Defendant's delinquent contributions. The Court finds that Plaintiffs reasonably became aware of Defendant's delinquent contributions during the 2007 audit. *See, e.g., Northwest Adm'rs, Inc.*, 2006 WL 1626940, at *4 (finding that the plaintiff appeared to have relied upon the defendant's inaccurate monthly reports, and would not have had reason to know of the unpaid pension contributions until completing an audit, which began the four year statute of limitations). The Court finds that Plaintiffs' action, filed on May 10, 2010, is therefore not time barred under the four-year statute of limitations. As will be discussed below, however, interest on contributions paid late from more than four years before May 10, 2010 are time barred.

### 1.     Principal Contributions

Plaintiffs' Motion for Default Judgment seeks the principal amounts of: $25,414.64 in contributions reported, but not paid for the period July - August 2010; $513.70 in contributions not reported and not paid for the period January - August and November 2008; and $5,514.52 in contributions not reported and not paid for the period August - December 2007, which were

**United States District Court**
For the Northern District of California

1   discovered by audit.  This request is supported by: (1) the declaration of the Accounts Receivable

2   Manager for the Laborers Funds Administrative Office of Northern California, John J. Hagan; (2)

3   the Employer Reports of Contribution that were submitted by Defendant for the relevant months.

4   This evidence supports Plaintiffs' request for unpaid contributions.  Therefore, Plaintiffs should be

5   awarded $31,442.86 of principal for past due employee fringe benefit contributions.

6               **2.       Interest and Liquidated Damages**

7        In this case, Defendant agreed to pay both interest and liquidated damages on delinquent

8   contributions.  Hagan Decl., ¶16 & Ex. G & Ex. H.  It is proper to award both liquidated damages

9   and interest if the agreement between the parties so provides, but plaintiffs are entitled to recover

10  double the interest amount, if they so choose, under the ERISA statute.  *See Northwest Adm'rs Inc.*,

11  2006 WL 1626940, at *5 (referencing *Operating Engineers Local 139 Health Benefit Fund v.*

12  *Gustafson Construction Corp.*, 258 F.3d 645, 654 (7th Cir. 2001) (holding that section 1132(g)(2) is

13  a penalty statute which permits ERISA plans to choose between either liquidated damages plus

14  interest, or double interest)).  The Court recommends that the interest rate amount requested in this

15  case is reasonable because the 1.5% per month interest rate under the agreement comports with other

16  interest rates awarded in this district.  *See, e.g.*, *Board of Trustees of Laborers Health and Welfare*

17  *Trust Fund*, 2007 WL 3071003, at *8 (N.D. Cal. Oct. 19, 2007) ("The rate of 1.5% per month is not

18  uncommon in these contracts and not unreasonable.").

19       In their Motion for Default Judgment, Plaintiffs seek the following amounts in interest and

20  penalty interest: $1,378.16 in interest under 29 U.S.C. § 1132(g)(2)(B), and $1,378.16 in penalty

21  interest under 29 U.S.C. § 1132(g)(2)(C) for the reported but unpaid principal contributions from

22  July and August 2010; $582.37 in interest under 29 U.S.C. § 1132(g)(2)(B), and $582.37 in penalty

23  interest under 29 U.S.C. § 1132(g)(2)(C) for the unreported and unpaid principal contributions from

24  January - August and November 2008; and $29,616.64 in interest under 29 U.S.C. § 1132(g)(2)(B),

25  and $29,616.64 in penalty interest under 29 U.S.C. § 1132(g)(2)(C) for unreported and unpaid

26  contributions discovered in Plaintiffs' audit for the period August - December 2007.  Specifically,

27  Plaintiffs calculate their interest and penalty interest on unpaid contributions under § 1132(g)(2)(B)

28  and (C) as follows:

**United States District Court**
For the Northern District of California

| | |
|---|---|
| § 1132(g)(2)(B) interest at a monthly rate of 1.5% (Contributions reported, not paid for Jul. - Aug. 2010) | $1,378.16 |
| § 1132(g)(2)(C) penalty interest for the same period | $1,378.16 |
| § 1132(g)(2)(B) interest at a monthly rate of 1.5% (Contributions not reported, not paid for Jan. - Aug. and Nov. 2008) | $582.37 |
| § 1132(g)(2)(C) penalty interest for the same period | $582.37 |
| § 1132(g)(2)(B) interest at rate of 1.5% (Contributions not reported, not paid during the audit period[3]) | $29,616.64 |
| § 1132(g)(2)(C) penalty interest for the same period | $29,616.64 |
| **Total interest & Liquidated Damages** | **$64,747.80** |

The Court recommends awarding the first four amounts set forth in the table above.  The Court recommends reducing the $29,616.64 in interest and $29,616.64 in penalty interest because those amounts reflect interest due not only on unpaid contributions, but also on contributions that were paid, but paid late.  Motion at 8, FN 1 (explaining that Defendant made installment payments to reduce the principal balance such that the only principal contributions left unpaid at the time of the lawsuit were those for August - December 2007); Hagan Decl., Ex. P (showing that the total $29,616.64 amount reflects interest owed on delinquent principal contributions not just from August - December 2007, but from the entire audit period of January 2006 - December 2007).  As described

---

[3] $29,616.64 is the sum of the interest payments due for the entire audit period of January 2006 - December 2007, not just the months of August - December 2007 for which there are currently unpaid principal contributions.

below, courts award damages on contributions that were paid, but paid late on the basis of contract law and federal common law rather than ERISA statutory law.  Therefore, the Court recommends awarding $5,004.35 in interest and $5,004.35 in penalty interest on the still outstanding August - December 2007 principal contributions[4] pursuant to § 1132(g)(2)(B) and (C), and assessing Plaintiff's entitlement to interest and liquidated damages on the paid but, paid late amounts for the period of January 2006 - July 2007 in the following section.  *See Operating Engineers Local 139 Health Benefit Fund v. Gustafson Const. Corp.*, 258 F.3d 645, 654-55 (7th Cir. 2001) (explaining that since section 1132(g)(2) is inapplicable to interest and liquidated damages on principal contributions that were paid, but paid late, they must be adjudicated under common law-but federal common law, which governs the interpretation of ERISA plans).

> **3.     Interest and Liquidated Damages Due On Contributions Paid, But Paid Late**

Plaintiffs seek to recover two sums related to contributions that were paid, but paid late. First, Plaintiffs request $45,995.11 in interest and liquidated damages on principal amounts they identify as having been paid, but paid late during various time periods between 2004 and 2010. Second, Plaintiffs request $24,612.29 in interest under section 1132(g)(2)(B) and $24,612.29 in penalty interest under section 1132(g)(2)(C) on principal amounts that were originally unpaid, but paid during the audit period.[5]  As will be discussed further below, Plaintiffs' recovery on these amounts will be limited by the fact that interest and liquidated damages on contributions paid, but paid late are awarded pursuant to contract provisions and federal common law, not Section 1132(g)(2).

With respect to the first amount, Plaintiffs request $45,995.11 under 29 U.S.C. § 1132(g)(2)(E) for interest due on contributions that were paid, but paid late for the periods of June - December 2004, February - November 2005, January - December 2006, January - December 2007, January - December 2008, January - December 2009, and January - June 2010.  Pursuant to the

---

[4]The Court calculates these totals based upon the sum of the interest amounts set forth in Exhibit P to the Hagan Declaration for the time period August-December 2007.

[5]The Court calculates these totals based upon the sum of the interest amounts set forth in Exhibit P to the Hagan Declaration for the time period January 2006 - July 2007.

1   contractual agreement between the parties, Defendant was obligated to "pay interest on the

2   delinquent contributions in the amount of 1.5% per month until paid in full, and also pay the amount

3   of $150.00 for each delinquent contribution as liquidated damages, and not as a penalty." Hagan

4   Decl., ¶ 16 & Ex. H. Plaintiffs therefore arrive at the requested $45,995.11 by totaling the

5   $35,945.11 in cumulative interest on these payments and the sum of the $150/month liquidated

6   damage fees for these payments, which is $10,050, as set forth by contract. Hagan Decl., ¶ 31 & Ex.

7   Q.

8       Plaintiffs argue that although Section 1132(g)(2) only provides for interest and liquidated

9   damages or double interest on unpaid contributions, the Court should exercise its discretion to award

10  interest and liquidated damages on the contributions that were paid, but paid late, citing the Ninth

11  Circuit's decision *Idaho Plumbers and Pipefitters Health and Welfare Fund v. United Mechanical*

12  *Contractors, Inc,* 875 F.2d 212 (9th Cir. 1989). Motion at 10. The issue that was addressed in

13  *Idaho Plumbers*, is whether a contractual remedy that is not provided for under Section 1132(g) -

14  and which provides for higher money damages than would be permitted under that section - is

15  preempted by ERISA. In *Idaho Plumbers*, the court found that such contractual provisions are not

16  preempted by ERISA law. 875 F.2d at 217. There, the Ninth Circuit addressed the question of

17  whether a provision in a plan governed by ERISA that set liquidated damages for late contributions

18  at 20% should be enforced, even though the contributions had already been paid at the time the

19  action was filed, *i.e.*, the contributions were paid, but paid late, and therefore did not fall within the

20  ambit of Section 1132(g)(2), which only governs recovery for unpaid contributions.

21      In considering whether liquidated damages that arose under the contract but were not

22  provided for under Section 1132(g) were preempted by ERISA , the Court looked to the legislative

23  history of ERISA. *Id.* at 216-17. It pointed to statements indicating that Congress intended to

24  preempt only state laws that limited the remedies available for late and unpaid contributions, such as

25  the following language in a report by the House of Representatives:

26      The Committees [sic] amendment provides that in the case of a civil action by any
        person to collect delinquent multiemployer plan contributions, regardless of
27      applicable law, the court before which the action is brought may award the plaintiff
        (1) reasonable attorneys fees, (2) court costs, and (3) liquidated damages not to
28      exceed 20 percent of the amount of delinquent contributions as determined by the
        court ... *The bill preempts any State or other law which would prevent the award of*

17

United States District Court

For the Northern District of California

1    *reasonable attorneys fees, court costs or liquidated damages or which would limit*
     *liquidated damages to an amount below the 20 percent level.*  However, the bill does
2    not preclude the award of liquidated damages in excess of the 20% level where an
     award of such a higher level of liquidated damages is permitted under applicable
3    State or other law.  *The Committee amendment does not change any other type of*
     *remedy permitted under State or Federal law with respect to delinquent*
4    *multi-employer plan contributions.*

5    *Id.* (quoting H.R.Rep. No. 869, 96 Cong., 2d Sess. (1980) (Part II), reprinted in 1980 U.S.Code

6    Cong. & Admin.News 2918, 3037-38) (emphasis added in *Idaho Plumbers*).  On the basis of this

7    legislative history, the Ninth Circuit concluded that the contractual liquidated damages at issue

8    in *Idaho Plumbers* were not preempted by ERISA.  *Id.* at 217.

9          The Court went on to ask whether the liquidated damages provision was enforceable under

10   federal common law.  *Id.* at 217-218.  It applied a two-part test for enforcing liquidated damages

11   provisions: 1) whether the harm caused by the breach is difficult to quantify; and 2) whether the

12   damages represent a reasonable forecast of the compensation for the harm caused.  *Id.* at 218.  It held

13   that the provision was not a reasonable forecast of the harm, citing the fact that a four-day

14   delinquency gave rise to over $9,000.00 in damages under the liquidated damages provision.  *Id.*

15   Therefore, the court concluded, the provision was unenforceable on public policy grounds.  *Id.*

16         In *Bay Area Painters and Tapers Pension Trust Fund v. Golden Vas Painting*, the court cited

17   *Idaho Plumbers* in support of its conclusion that "as to late-paid contributions, Plaintiffs are entitled

18   to liquidated damages and interest under a breach of contract claim pursuant to federal common

19   law."  2011 WL 2020250, at *8 (N.D. Cal. Mar. 17, 2011).  The court explained that the harm by

20   the defendant's breach was difficult to estimate and found that 10% of late-paid contributions was a

21   "reasonable forecast of just compensation for the potential harm."  *Id.*  The court accordingly

22   awarded interest and liquidated damages on the paid, but paid late contributions, as provided in the

23   contract between the parties.  *Id.* at *9.

24         The legislative history cited in *Idaho Plumbers* and the district court's interpretation of it in

25   *Bay Area Painter* persuade the Court that the interest and liquidated damages on contributions that

26   were paid, but paid late, are not preempted by ERISA.  As in *Bay Area Painters*, the Court finds that

27   the harm caused by Defendant's breach is difficult to estimate due to the administrative, accounting

28   and legal work that must be performed in connection with such delinquencies.  *See id.* at *8.  The

**United States District Court**
For the Northern District of California

1    Court also finds that 1.5 % in monthly interest and $150 in monthly liquidated damages payments

2    are "a reasonable forecast of just compensation for the potential harm." *See id.*  The contract

3    provisions are therefore enforceable under federal common law.[6]

4         The only applicable limit on the recovery is the previously discussed four-year statute of

5    limitations in this case.  *See No. Cal. Retail Clerks Unions and Food Employers Joint Pension Trust*

6    *Fund.*, 906 F.2d at 1372.  The Court therefore recommends that Plaintiffs recover interest and

7    liquidated damages on the contributions paid, but paid late for the months of: May - December 2006,

8    January - December 2007, January - December 2008, January - December 2009, and January - June

9    2010 in the amount of $30,618.99 in interest and $7,350 in liquidated damages.  The Court

10   recommends that Plaintiffs be denied the interest and liquidated damages amounts they requested for

11   the periods of June - December 2004, February - November 2005, and January - April 2006.

12        As previously mentioned, Plaintiffs also discovered unpaid principal contributions from

13   January 2006 - December 2007 during their audit of Defendant's records and sought $29, 616.64 in

14   interest under Section 1132(g)(2)(B) and $29,616.64 in penalty interest under Section 1132(g)(2)(C)

15   on the delinquent contributions during the entire audit period.  *See* Hagan Decl., Ex. P.  Defendant

16   subsequently made payments and ultimately eliminated outstanding principal for the period of

17   January 2006 - July 2007.  *See* Motion at 8, FN 1.  The $24,612.29 in interest and $24,612.29 in

18   penalty interest requested for January 2006 - July 2007 is therefore on principal contributions that

19   were originally unpaid, but paid during the audit.  Because interest and liquidated damages on

20   contributions paid, but paid late are awarded pursuant to the contract provisions deemed enforceable

21   under federal common law, not Section 1132(g)(2), Plaintiffs are not entitled to double interest for

22   this period.  The Court accordingly recommends that Plaintiffs be awarded $24,612.29 in interest

23   and $0 in liquidated damages, since Plaintiffs did not provide the Court with an accounting of the

24   liquidated damages in Exhibit P.

25

26

27
        [6]As a result, for interest on contributions that were paid, but paid late, the Plaintiffs can only

28   recover interest and liquidated damages specified in the contract; they cannot recover double interest
     under section 1132(g)(2).

### 3.   Attorneys' Fees and Costs

Having prevailed in this action for unpaid and late paid contributions, Plaintiffs are also entitled to reasonable attorneys' fees and costs of the action.  29 U.S.C. § 1132(g)(2)(D).  The Ninth Circuit held in *Kemmis v. McGoldrick* that while § 1132(g)(2) makes the award of attorney's fees mandatory, five (5) factors inform the reasonableness of a requested fee award .  706 F.2d 993, 997-98 (9th Cir. 1983).  These factors are: (1) the degree of the opposing party's culpability or bad faith, (2) the ability of the opposing party to satisfy an award of fees, (3) whether an award of fees would deter others from acting under similar circumstances, (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA, and (5) the relative merits of the parties' positions.  *Id.*

### a.   Attorneys' Fees

In the Ninth Circuit, the starting point for determining reasonable fees is the calculation of the "lodestar," which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate.  *See Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987).  In calculating the lodestar, the Court must determine a reasonable rate and a reasonable number of hours for each attorney.  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987).

Here, Plaintiffs seek $11,407 in attorneys' fees for 34.8 hours of work at the hourly rate of between $325.00 and $345.00 per hour.[7]  Declaration of Ronald L. Richman in Support of Motion for Default Judgment ("Richman Decl."), ¶¶ 5-6 & Ex. A.  Plaintiffs cite to *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007) (establishing that rates between $375 and $400 are reasonably in line with going rates within the legal community for ERISA cases) to support the reasonableness of their hourly rate.  The Court finds hourly rate to be reasonable but recommends that the number of hours be reduced.

The Court finds that the hours for which Plaintiff requests fees are excessive.  Plaintiffs have

---

[7]Plaintiffs' counsel's initial rate in 2010 was $325 per hour.  The rate was changed to $345.00 as of January 1, 2011.  Therefore the rate shown for Ronald L. Richman in Exhibit A to his declaration is "a blended rate, taking into consideration the fees [he]charged at $325 in 2010 and the fees charged in 2011 at the rate of $345."  Richman Decl., ¶ 5, n. 1.

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1   not demonstrated that this case was particularly complex or required extensive work beyond the

2   typical ERISA case.  *See e.g.*, *Northwest Adm'rs, Inc. v. U.S. Parking, Inc.*, 2010 WL 1854151

3   (N.D. Cal. Apr. 2, 2010) (attorney in similar ERISA case billed 4 hours at a rate of $180 per hour).

4   The Court therefore recommends reducing the number of hours billed by 50% and awarding

5   Plaintiffs $5,703.50 in attorneys' fees.

**b.     Costs**

7   Plaintiffs seek $992.51 for the following costs incurred in prosecuting this action: (1)

8   document production; (2) filing fee; (3) service of the summons and complaint; and (4) messenger

9   service to deliver hard copies of the pleadings to the Court.  Richman Decl., ¶ 7 & Ex. A.  The Court

10  finds that under Civil Local Rule 54-3(a)(1), an award of the clerk's filing fee is allowable if paid by

11  the claimant.  Plaintiffs paid $350.00 in order to file this action.[8]  Therefore, the Plaintiffs are

12  entitled to $350.00 in filing fees.  The Court finds that under Civil Local Rule 54-3(a)(2), an award

13  of service of process fees are allowable to the extent actually incurred.  The Plaintiffs state they

14  incurred $198.00 in costs in serving the Complaint and Amended Complaint Eladio Perez.  Plaintiffs

15  state they incurred $14.00 in document production.  Additionally, Plaintiffs state they incurred

16  $283.50 in messenger service fees.  According to Article IV, Section 3 of the Trust Agreement, an

17  employer is to reimburse the Trust Funds for attorneys' fees and costs incurred in a suit to enforce

18  payment of outstanding contributions.  Hagan Decl. Ex. D.  These costs for document production

19  and messenger fees are reasonable and should be awarded in full.  The Plaintiffs should be awarded

20  $957.51 in costs.

**4.     Mandatory Injunction**

22  Plaintiffs seek a mandatory injunction compelling Defendant, Eladio Perez to submit to an

23  audit of its financial records by the Board of Trustees for the period January 2006 to the present.  In

24  support of their claim, Plaintiffs have provided a copy of Article IV, Section 7 of the Trust

25  Agreement, stipulating that signatories to the agreement are required to submit to audits of their

---

[8]Plaintiffs' itemized cost bill states that the filing fee is $385.00.  This appears to be a clerical error.  The amount sought by Plaintiff will be reduced by $35.00 to reflect the correct filing fee paid by Plaintiffs of $350.00 (as reflected on the docket sheet in this case).

records for the purposes of the administration of the plan.  Hagan Decl., Ex. E.  Specifically,

Plaintiffs request:

> a mandatory injunction ordering defendant to allow a Trust Funds auditor to come onto defendants' premises and to submit to an audit of their financial records for the period from January, 2006 through the present including, but not limited to, the following records:
>
>> Individual earnings records; federal tax forms W-3/W-2 and 1069[/]1099; reporting forms for all Trust Funds, State DE-3/DE-6 Tax Reports; Workers' Compensation insurance; employee time cards; payroll registers/journals; quarterly payroll tax returns (Form 941); check register and supporting cash vouchers; forms 1120, 1040 or partnership tax returns; general ledger; source records, including time cards and time card summaries for all employees; certified payroll reports; personnel records indicating job classifications and hire/termination dates; cash disbursement journal; vendor invoices; copies of subcontract agreements; cash receipts journal; job cost records; records of related entities; and any other books and records that may be necessary to complete the auditor's determination or provide additional explanation of defendants' financial records.

Motion at 14.

Additionally, Plaintiffs cite *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 581 (1985) for the general proposition that the right of employee benefit plans to enforce such power to audit has been long and well established.  ("Given Congress' vision of the proper administration of employee benefit plans under ERISA, we have little difficulty holding that the audit requested by Central States is well within the authority of the trustees as outlined in the trust documents.")  Therefore, Plaintiffs' request for a mandatory injunction requiring Defendant to submit to an audit appears necessary to effectuate the administration of the Trust Funds by the Board of Trustees.  The Court recommends, however, that the period of the audit be reduced to January 2008 to the present because Plaintiffs' evidence demonstrates that they have already audited Defendants' records through December 2007.  Hagan Decl., Ex. N.

**IV.   CONCLUSION**

For the reasons stated above, the Court recommends that Plaintiffs' Motion be GRANTED IN PART and DENIED IN PART, and that default judgment be entered against Defendant. Plaintiffs should be awarded:

> (1) the unpaid balance of employee fringe benefit contributions reported but not paid for the period of July and August 2010 in the principal amount of $25,414.64;

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

(2) contributions not reported, and not paid, for the period of January - August and November 2008 in the amount of $513.70;

(3) the unpaid principal balance of contributions not reported and not paid based on an audit[9] for the period December 2005 -- December 2007 in the amount of $5,514.52;

(4) interest and liquidated damages for all delinquent principal contributions for a total of $13,929.76 under § 1132(g)(2)(B) and (C);

(5) liquidated damages and interest accruing on contributions paid, but paid late in the amount of $62,581.28;

(6) attorneys' fees and costs in the amount of $6,661.01;

(7) a mandatory injunction requiring the Defendant Eladio Perez to submit to an audit of its financial records by the Board of Trustees for the period January 2008 to the present; and finally,

(8) the court should retain jurisdiction of the parties and the subject matter to enforce its mandatory injunction and to entertain a motion for a further money judgment, should the audit disclose amounts that may be owed by Defendant to the Trust Funds.

Dated:   November 7, 2011

_____
JOSEPH C. SPERO
United States Magistrate Judge

---

[9]This amount represents hours worked and contributions due, as discovered by an audit performed by Plaintiffs.  *See* Hagan Decl., at 8, lines 8-17.  *See also*, Hagan Decl., Exh. N (Statement of Contributions Due Laborers Trust Funds [Not Reported/Not Paid]).